O

# United States District Court
# Central District of California

| | |
|---|---|
| MARK STAINBROOK, | Case No. 2:16-CV-00090-ODW |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S** |
| TARGET CORPORATION; and DOES 1 through 10, inclusive, | **MOTION TO REMAND [11]** |
| Defendant. | |

## I.  INTRODUCTION

Plaintiff Mark Stainbrook moves to remand this action to state court for lack of subject-matter jurisdiction. (ECF No. 11.)[1] Plaintiff argues that Defendant Target Corporation ("Target") failed to establish diversity jurisdiction under 28 U.S.C. § 1332. For the reasons discussed below, the Court finds that the amount in controversy exceeds $75,000 and there is diversity of citizenship. Therefore, this Court **DENIES** Plaintiff's Motion to Remand.[2] (*Id.*)

---

[1] Despite failing to comply with Local Rule 7-3, this Court, in its discretion, will accept the Motion in its entirety.

[2] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II.  FACTUAL BACKGROUND

Plaintiff's claims arise from the termination of his employment. On November 25, 2015, Plaintiff filed this action in state court, alleging the following causes of action against Defendant: (1) disability discrimination, (2) failure to provide reasonable accommodations, (3) failure to engage in the interactive process, (4) failure to prevent discrimination, (5) retaliation in violation of the Fair Employment and Housing Act ("FEHA"), (6) retaliation in violation of the California Family Rights Act ("CFRA"), (7) violation of Labor Code §§ 6300 and 6400 *et seq.*, and (8) violation of Labor Code § 1102.5.  (Not. of Removal ¶ 3, Ex. A.)  Plaintiff alleges that he worked for Defendant in a managerial capacity prior to his termination in October 2015.  (Complaint ("Compl.") ¶¶ 6, 11.)

Plaintiff alleges that during his employment he was diagnosed with a stress and anxiety disorder that arose out of menacing conduct from a purported customer who made threatening statements about Plaintiff's sexuality.  (*Id.* ¶¶ 6, 9.)  Plaintiff reported the incidents to Defendant's security and human resources, but Plaintiff claims that Defendant refused to establish an adequate security plan to protect Plaintiff from the purported customer.  (*Id.* ¶¶ 7–8.)  Plaintiff required a disability leave of absence until he was ready to work again.  (*Id.* ¶¶ 9–10.)  Upon his return to work, Plaintiff and his physician requested reasonable accommodations that would allow him to perform his job.  (*Id.* ¶ 10.)  Specifically, Plaintiff requested the following: the identity of the purported customer; a permanent transfer to another retail location 15 to 20 miles from the original Northridge, California location; a part-time position for six months and then to return to work on a full-time basis without restrictions; a change to a position with less exposure to customers for six months; and a clear security plan.  (*Id.*)  Plaintiff claims that Defendant's human resource representative engaged in conduct intended to interfere with Plaintiff's right to accommodations.  (*Id.* ¶ 11.)  Defendant did not offer Plaintiff's requested accommodations, and his employment was terminated in October 2015.  (*Id.*)

On November 25, 2015, Plaintiff commenced this action in Los Angeles County Superior Court. (Not. of Removal, Ex. A.) Defendant removed the action to this Court on January 6, 2016, on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332(a), 1441(a), and 1441(b). (ECF No. 1.) On February 4, 2016 Plaintiff moved to remand this action. (ECF No. 11.) Defendant timely opposed. (ECF No. 12.) Plaintiff's Motion to Remand is now before the Court for this decision.

### III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). But courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (citing *Gaus*, 980 F.2d at 566).

Federal courts have original jurisdiction where an action presents a federal question under 28 U.S.C. § 1331, or diversity of citizenship under 28 U.S.C. § 1332. A defendant may remove a case from a state court to a federal court pursuant to the federal removal statute, 28 U.S.C. § 1441, on the basis of federal question or diversity jurisdiction. To exercise diversity jurisdiction, a federal court must find complete diversity of citizenship among the adverse parties, and the amount in controversy must exceed $75,000, usually exclusive of interest and costs. 28 U.S.C. § 1332(a).

### IV. DISCUSSION

The parties dispute whether the amount in controversy and diversity of citizenship requirements have been satisfied. Defendant argues that all parties are

diverse, and that federal court jurisdiction is therefore proper. (Not. of Removal ¶¶ 7, 10–12.) Defendant also notes that Plaintiff seeks compensation for compensatory damages, emotional distress, punitive damages, and attorneys' fees. (*Id.* ¶ 14.) Defendant contends that these damages, in the aggregate, more likely than not satisfy the amount in controversy requirement. (*Id.* ¶ 18.) This Court considers each element of diversity jurisdiction below.

**A.     Diversity of Citizenship**

The Court finds the diversity of citizenship requirement satisfied, as Plaintiff is a citizen of California and Defendant is incorporated in Minnesota, with a principal place of business also in Minnesota.

*1. Plaintiff is a California Citizen*

For diversity jurisdiction purposes, a natural person is a citizen of a state if he or she is a citizen of the United States and the state is her state of domicile. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* The intention to remain may be established by factors such as: current residence; voting registration and practices; location of personal and real property; location of brokerage and bank accounts; location of spouse and family; membership in unions and other organizations; place of employment or business; driver's license and automobile registration; and payment of taxes. *Kyung Park v. Holder*, 572 F.3d 619, 624–25 (9th Cir. 2009).

Here, Plaintiff states that he resides in California. (Compl. ¶ 1.) The only issue here is whether Plaintiff intends to remain in the State. Defendant argues that the nature of Plaintiff's suit—that he sought accommodations to continue to work at a Southern California Target—confirms that Plaintiff intends to remain in California. (Opposition to Motion to Remand ("Opp'n") 8.) As such, the only relevant place of continued employment for Plaintiff is located in California.

Furthermore, Plaintiff has provided: (1) a workers' compensation action, which he testified under oath that he has lived at the same address in Chatsworth for five years and that he has lived in California for eight years with no plans to move; and (2) a California driver's license that expires in February 2018. (Supplemental Declaration of Mandana Massoumi ("Supp. Massoumi Decl.") ¶¶ 2–3, Ex. A, B.) Taken together, and in the absence of any contrary evidence, it is reasonable to infer that Plaintiff intends to remain in the State. Accordingly, Defendant has satisfied its burden of establishing that Plaintiff was a California citizen at the time of removal.

*2. Defendant is a Minnesota Citizen*

A corporation is deemed to be a citizen of every state and foreign state by which it has been incorporated and of the state or foreign state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

Here, Plaintiff admits that Defendant is incorporated in Minnesota, but argues that Defendant has not shown its principal place of business to be outside of California. (Compl. ¶ 2.) To support this proposition, Plaintiff cites *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495 (9th Cir. 2001), in which the Ninth Circuit reached its ruling by using the "place of operations" test as an alternative to the "nerve center" test. (*See* Mot. 8.) Plaintiff's reliance on *Tosco* and the "place of operations" test is misplaced. The United States Supreme Court has since rejected the "place of operations" test for determining a corporation's principal place of business; instead courts are to apply the "nerve center" test, which holds that a corporation's principal place of business is where "a corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . not simply an office where the corporation holds its board meetings." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). Since the Supreme Court's decision in *Hertz*, this Court has consistently applied the "nerve center" test in determining a corporation's principal place of business for purposes of satisfying 28 U.S.C. § 1332(c)(1).

Under the "nerve center" test, Defendant successfully establishes that its principal place of business is in Minnesota, where it maintains its corporate offices, corporate records, employs its top executives, and pays its corporate taxes. (Not. of Removal ¶¶ 10–11; Opp'n 9.) As such, the jurisdictional requirement for diversity of citizenship is satisfied.

**B.     Amount in Controversy**

This Court finds that when aggregating all of the damages that Plaintiff seeks, the amount in controversy exceeds the jurisdictional minimum of $75,000. Plaintiff's Complaint does not state the amount in controversy. (ECF No. 1–1.) Since Plaintiff does not specify the amount of damages sought, Defendant, as the removing party, must prove by a preponderance of the evidence that the amount in controversy has been met. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). Under this standard, "the defendant must provide evidence that it is 'more likely than not' that the amount in controversy satisfies the federal diversity jurisdictional requirement." *Id*. In its discretion, a district court may accept certain post-removal admissions as determinative of the amount in controversy and must look beyond the four corners of the complaint. *Id*. at 690–91; *see also Deaver v. BBVA Compass Consulting & Benefits, Inc.*, No. 13-CV-00222-JSC, 2014 WL 2199645, at *3–4 (N.D. Cal. May 27, 2014) (holding that a defendant may rely upon allegations of a prior action when assessing the amount in controversy).

Defendant argues that the amount in controversy for Plaintiff's claims of compensatory damages, emotional distress, punitive damages, and attorneys' fees "more likely than not" exceed $75,000. (Not. of Removal ¶ 18.) Plaintiff contends that Defendant's statements regarding the amount in controversy are conclusory allegations due to the lack of supporting evidence. (Mot. 5.) The Court finds that Defendant has satisfied its burden.

*1. Compensatory Damages*

Plaintiff alleges in his Complaint that "he has incurred and continues to incur general and specific damages . . . includ[ing] lost income, employment, and career opportunities . . . ." (Supp. Massoumi Decl., Ex. A, Compl., ¶¶ 17, 27, 37, 44.) Defendant contends that Plaintiff's compensatory damages alone would exceed $75,000 over the course of two years. Defendant calculated approximate lost earnings by doubling Plaintiff's annual salary of $38,480.00 per year ($18.50 per hour, approximately 40 hours per week), for a total of $76,760.00. (Not. of Removal ¶ 17; *see also* Supp. Massoumi Decl., ¶ 5, Ex. E.) Plaintiff argues that Defendant's calculations are speculative because Plaintiff may mitigate his damages or may not have continued working full time. (Mot. 5.) The Court calculates Plaintiff's lost earnings as follows. Plaintiff's employment was terminated in October 2015. (Compl. ¶ 11.) This action was removed on January 6, 2016. Thus, assuming a monthly salary of $2,960.00, Plaintiff's wage loss from termination until removal is $8,880.00. Considering a hypothetical trial date of January 31, 2017 (ECF No. 22), these damages will equal $44,400.00 by the time of trial. *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1032 (N.D. Cal. 2002). Therefore, compensatory damages in the amount of $44,400.00 will be included to meet the amount in controversy requirement.

*2. Emotional Distress and Punitive Damages*

Defendant next contends that emotional distress damages and punitive damages, when added to compensatory damages, will meet the amount in controversy requirement. (Opp'n 5–6.) In determining the amount in controversy, the Court may include the request for punitive damages and emotional distress damages if available to plaintiff under the applicable law. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 947 (9th Cir. 2001); *Simmons*, F. Supp. 2d at 1033–34 (N.D. Cal. 2002). California law allows the recovery of punitive damages based on FEHA claims, wrongful termination, and intentional infliction of emotional distress. *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 176 (1980); *Simmons*, 209 F. Supp. 2d at 1033. To establish

emotional distress and punitive damages, "[a] defendant may introduce evidence of jury verdicts in cases involving analogous fact." *Simmons*, 209 F. Supp. 2d at 1033.

Defendant argues that in recent jury verdicts, the Central District has granted emotional distress damages exceeding the $75,000 threshold in similar employment discrimination cases. *Sawyer v. Detail Data, LLC.*, No. SACV 15-0184 JVS, 2015 WL 3929695, at *2, n.1 (C.D. Cal. Apr. 29, 2015) (denying motion to remand and noting that Southern California juries in discrimination cases recently awarded $125,000 and $275,000 in emotional distress). Further, Defendant argues Plaintiff's claim for punitive damages, could also exceed the threshold $75,000. (Opp'n 6–7.) In its Notice of Removal, Defendant explains that punitive damages are often calculated as a multiplier of compensatory damages. (Not. of Removal ¶ 18.) Defendant argues that by the time of trial, Plaintiff's punitive damages could exceed or come close to exceeding the jurisdictional amount. *See Sawyer*, *supra*, at *2 n.2 (noting that a Southern California jury in a discrimination case based on mental disability recently awarded $7,570,261 in punitive damages). Plaintiff provides no other evidence for consideration, and thus the Court agrees with Defendant. Because Plaintiff could receive punitive and emotional distress damages that, standing alone, could meet the $75,000 jurisdictional minimum, it is more likely than not that, combined with the potential compensatory damages, Plaintiff could meet the amount in controversy requirement.

*3. Attorneys' Fees and Costs*

Plaintiff also seeks to recover attorneys' fees and costs. (Compl., ¶¶ 19, 29, 39, 52, 58.) So long as the underlying statute authorizes a fee award for a successful litigant, attorneys' fees can be taken into consideration when determining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998). The measure of fees is that which accrues until the action is resolved. *Simmons*, 209 F.2d at 1034–35 (N.D. Cal. 2002).

1 Here, Plaintiff can seek attorneys' fees under California Government Code section 12940. *See Sasso v. Noble Utah Long Beach, LLC,* No. CV 14-09154-AB (AJWx), 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015). In considering a motion to remand FEHA claims, the *Sasso* Court held that a reasonable rate for attorneys' fees in employment cases is $300 per hour. *Id.* at *6. Furthermore, it also held that "recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours," and thus "100 hours is an appropriate and conservative estimate." *Id.* Accordingly, the *Sasso* Court held that attorneys' fees in that case were reasonably expected to equal at least $30,000. *Id.* Because Defendant has not provided the Court with enough evidence to determine how much attorneys' fees will be, the Court will adopt the same conservative estimate in this case. Thus, the Court concludes that Plaintiff's demand for attorneys' fees under FEHA adds at least $30,000 to the amount in controversy. However, even without these fees, the potential damages available for compensatory damages, punitive damages, and emotional distress exceed the jurisdictional minimum.

The Court therefore finds that the compensatory damages, emotional distress, punitive damages, and attorneys' fees, in the aggregate, well exceed the jurisdictional minimum.

///
///
///
///

9

## V. CONCLUSION

For the reasons discussed above, the Court finds that there is subject-matter jurisdiction over this action under 28 U.S.C. § 1332. Accordingly, the Court **DENIES** Plaintiff's Motion to Remand. (ECF No. 11.)

**IT IS SO ORDERED.**

June 8, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**